UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20168-ALTMAN/Reid

**HARI SAMI**,

    *Plaintiff*,

v.

**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA**,

    *Defendant*.

_____/

# ORDER

Hari Sami, our Plaintiff, held a disability-insurance policy with The Guardian Life Insurance Company of America ("Guardian"). After Sami suffered a transient ischemic attack in 2016, he could no longer work at his job as a shipping supervisor and began to receive disability benefits from Guardian under his policy. But, under the policy, to continue receiving disability benefits after two years, Sami didn't just have to show that he was unable to work as a shipping supervisor—he'd also have to show that his disability prevented him from holding *any* gainful employment.

After an inquiry into Sami's medical history and condition, Guardian informed Sami on July 28, 2020, that (in its view) he was no longer "disabled" under the terms of the policy and, therefore, no longer qualified for long-term disability payments. Using the plan's internal review process, Sami appealed Guardian's decision, but the insurer reaffirmed its original position. Sami then sued Guardian on January 16, 2023, alleging that Guardian's denial of benefits was improper under *both* the terms of the plan *and* the strictures of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461.

The parties have each moved for summary judgment on Sami's claim. *See* Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ") [ECF No. 29]; Defendant's Motion for Summary Judgment

("Def.'s MSJ") [ECF No. 28]. After careful review of the motions, the record, and the governing law, we now **GRANT in part** the Plaintiff's Motion for Summary Judgment [ECF No. 29] and **DENY** the Defendant's Motion for Summary Judgment [ECF No. 28].

## THE FACTS[1]

On February 1, 2016, Hari Sami "began working as a shipping supervisor for Contec, LLC[.]" Defendant's Statement of Facts ("Def.'s SOF") [ECF No. 27] ¶ 13 (citing the Administrative Record ("AR") [ECF No. 26] at 605).[2] As an employee of Contec, Sami received long-term disability ("LTD") coverage "under an employee welfare benefit plan sponsored by Contec" and administered by Guardian (the "LTD Plan"). Plaintiff's Statement of Facts ("Pl.'s SOF") [ECF No. 30] ¶ 1 (citing AR at 1–397). The LTD Plan "became effective as to [ ] Sami on April 1, 2016." Def.'s SOF ¶ 3 (citing AR at 3632).

To receive disability payments under the LTD Plan, a "covered person" must (1) "become

---

[1] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (cleaned up). In adjudicating cross-motions, then, we consider each motion separately and, of course, resolve all reasonable inferences against the movant. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005); *see also Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019) ("The facts are described in the light most favorable to [the non-moving party]."); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes only and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)).

[2] The Administrative Record, which totals 3,750 pages, is reproduced on the docket across eight parts. *See generally* Administrative Record pt. 1 [ECF No. 26-1]; Administrative Record pt. 8 [ECF No. 26-8]. In citing to the Administrative Record, the Defendant refers to the page numbers as they appear in the full Administrative Record (*e.g.*, AR 00501), rather than to the corresponding page number in the individual docket entry (*e.g.*, Administrative Record pt. 2 [ECF No. 26-2] at 1). For clarity, we'll do the same.

2

disabled while insured by [the] plan"; (2) "remain disabled for [the] plan's elimination period";[3] and (3) "provide proof of loss," *id.* ¶ 5 (emphasis omitted) (quoting AR at 285), in the form of "objective medical evidence from a doctor who is not [the covered person] him or herself, his or her spouse, child, parent, sibling or business associate," *id.* ¶ 9 (emphasis omitted) (quoting AR at 276). For "the 180-day elimination period and the first 24 months thereafter," Pl.'s SOF ¶ 2 (citing AR at 74–76, 91), a claimant would be considered "disabled" if a "current sickness or injury caus[ed] physical or mental impairment to such a degree" that he could not "perform, on a full-time basis, the major duties of his . . . own occupation," Def.'s SOF ¶ 7 (quoting AR at 308). After that period, a claimant would only be considered "disabled"—and, therefore, entitled to benefits—if he was "unable to engage in *any* 'gainful work.'" Pl.'s SOF ¶ 2 (quoting AR at 91). The Plan defined "gainful work" as "[w]ork for which a covered person is, or may become, qualified by: (a) training; (b) education; or (c) experience." Def.'s SOF ¶ 8 (quoting AR at 310). The LTD Plan also granted "Guardian 'discretionary authority to determine eligibility for benefits and to construe the terms of the [LTD P]lan with respect to claims.'" *Id.* ¶ 11 (quoting AR at 391).

In April 2016, Sami suffered a "transient ischemic attack ('TIA') and acute dizziness," which left him unable to continue working at Contec. *Id.* ¶ 14 (quoting AR at 585). Sami also experienced "occipital neuralgia, chronic migraine headaches, chronic pain, vertigo, visual difficulties, and hemochromatosis." Pl.'s SOF ¶ 4 (citing AR at 400, 404, 409). Sami sought treatment for his TIA and dizziness and "applied for short-term benefits" under his plan with Guardian. Def.'s SOF ¶ 15 (quoting AR at 585). On May 13, 2016, Guardian approved Sami's "short-term disability benefits claim and began paying benefits." *Id.* ¶ 17 (quoting AR at 634).

---

[3] The LTD Plan defines the "elimination period" as the "period of time [a covered person] must be disabled, due to a covered disability, before this plan's benefits are payable." AR at 68. The LTD Plan here had a 180-day elimination period. *See* AR at 199 ("For disability due to injury[:] 180 days").

On October 20, 2016, Guardian's LTD Claims Department "received early notice of a claim for benefits from the Short-Term Disability Claims Department." *Id.* ¶ 18 (quoting AR at 3632). And, on November 11, 2016, Guardian confirmed that "Sami was eligible for long-term disability benefits under the LTD Plan." *Id.* ¶ 19 (quoting AR at 876). Sami then began receiving "monthly long-term disability benefits under the LTD Plan." *Id.* ¶ 20 (quoting AR at 876).

On April 17, 2018, Guardian notified Sami that his "own occupation period was set to end on October 15, 2018," meaning that the "new definition of 'disability' would have to apply to his claim." *Id.* ¶ 22 (quoting AR at 1166–67). In other words, for Sami to be considered "disabled" (and to continue receiving benefits under the LTD Plan), his condition would have to "prevent him from performing the duties of any occupation yielding a pay rate of $10.25 or greater per hour" for "gainful work[.]" *Ibid.* (quoting AR at 1166–67). Since Guardian determined that Sami's "dizziness and vertigo rendered him unable to perform the major duties of gainful work," he "continued to receive benefits under the LTD Plan" *after* the new definition took effect. *Id.* ¶ 23 (citing AR at 1167–2122, 3632).

"In accordance with the terms of the LTD Plan, Guardian conducted periodic reviews" of Sami's medical condition to determine whether he "remained disabled under the LTD Plan's definition." *Id.* ¶ 24 (citing AR at 2121, 3632). As part of these reviews, "Guardian sent records requests" to several of Sami's medical providers, including Dr. Suraj Verma, Sami's primary care physician. *Id.* ¶ 25 (citing AR at 2123–28, 3632–33). In one of these requests—a question-and-answer form dated March 4, 2020, *see* AR at 2134—Dr. Verma characterized Sami as "unable to work due to vertigo" and its "symptoms[.]" *Ibid.* And, on June 26, 2020, Dr. Verma informed Guardian that Sami "still ha[d] significant difficulties w[ith] work, mainly due to dizziness, thus being off of work." *Id.* at 2777. Finally, "[i]n a treatment note dated July 14, 2020," Dr. Verma continued to describe Sami as "'disabled' and unable to work." Pl.'s SOF ¶ 12 (quoting AR at 2860).

Nevertheless, "[o]n July 28, 2020, Guardian sent [ ] Sami a letter, informing him that, based

4

on the medical information on file, further benefits were not payable under the LTD Plan[.]" Def.'s SOF ¶ 30 (citing AR at 2795–2802). That letter also informed Sami "that he was entitled to appeal Guardian's decision, and it outlined the information he would need to provide to allow for such an appeal." *Id.* ¶ 32 (citing AR at 2795–2802). "Sami requested appeal review of Guardian's decision" on August 1, 2020. *Id.* ¶ 33 (citing AR at 2804). In response, Guardian told Sami it would "need records, if not on file[,] from all treating providers, hospitals, and facilities (including any therapy facilities) for the period of January 1, 2019 through [the] present" to complete its review. AR at 2852. Guardian also gave Sami the opportunity to "defer" the "review of [his] [a]ppeal [ ] for a period of up to 45 days, or until all records [we]re received—whichever c[ame] first." *Ibid.* "Per [ ] Sami's request," Guardian initiated its review of the appeal "on September 16, 2020, before it received all requested records, and referred the appeal to its in-house Nurse Case Manager." Def.'s SOF ¶ 35.

As part of its review, on November 19, 2020, Guardian referred Sami's medical files to Dr. Joel Shenker, a board-certified neurologist, and Dr. Jacqueline Hess, a board-certified specialist in internal and occupational medicine, *see* AR at 3549, for "an Independent Mutli-disciplinary Peer Panel Review," *id.* at 3385. Drs. Shenker and Hess were asked to "document [their] peer to peer discussion with Dr. Verma" and to review whether there was "sufficient medical evidence to support [Sami's] physical limitations and restrictions as of 01/01/2020 and beyond." *Id.* at 3385–86.

On December 7, 2020, Guardian notified Sami that it was "still awaiting the completed Peer Physician review" by Drs. Shenker and Hess. *Id.* at 3515. Because the deadline for Guardian to adjudicate Sami's claim was fast approaching, *see id.* at 3517 ("We will reach the expiration of our 2nd 45-day review period on December 13, 2020[.]"), Guardian asked Sami for "permission to extend beyond December 13, 2020," *ibid.* Sami refused, telling Guardian: "We are now going into the fifth month since my claim has been denied. Given that, I am not agreeable to another extension . . . . Please email and mail your determination." *Id.* at 3515. Sami also requested that Guardian "provide

5

[him] a complete claim file, should [it] reach [an] unfavorable determination." *Ibid.*

The following day, Guardian notified Sami that it "ha[d] received the completed Peer Physician Review, which is not favorable [to Sami]." *Id.* at 3509. In her Report, Dr. Hess found "no evidence to support a physical impairment due to non-neurological issues from 1/1/20 forward." Def.'s SOF ¶ 54 (quoting AR at 3543). And Dr. Shenker determined that "there were no exam findings or other objective observations to support a conclusion of neurologic impairment or limitation, and there was not otherwise any medical evidence of a supported neurologic impairment, limitation, or restriction." *Id.* ¶ 57 (quoting AR at 3532). Despite having received the Peer Physician Reports, Guardian did not share them with Sami at that time. *See* Pl.'s SOF ¶ 20 ("[I]n this instance the reports were being 'sent with [the] decision letter' because the regulatory deadline for making a final decision had arrived." (quoting AR at 3639)). Instead, Guardian informed Sami that, although it was *generally* "Guardian's Practice to allow 10 business days to respond to all new evid[ence] received during the Appeal review," Guardian would "be sending [Sami] all new evidence with [the] final determination letter" because Sami would "not allow an extension beyond December 13, 2020[.]" AR at 3509. Guardian did, however, send the Peer Physician Reports to Vocational Rehabilitation Specialist John Runzo, who prepared a "Transferability of Work Skills Report . . . [b]ased on the functionality described in the reports of file-reviewers Schenker and Hess[.]" Pl.'s SOF ¶ 18 (citing AR at 3583–86). Guardian also told Sami that it would "be sharing [the Peer Physician Reports] with Dr. Verma." AR at 3509.

On December 14, 2020, "Guardian notified Sami of the company's final decision to uphold on appeal the termination of his LTD benefits." Pl.'s SOF ¶ 19 (citing AR at 3629–38). Guardian's final determination letter "relied extensively on the file-review reports from Drs. Schenker and Hess . . . [and] cited Mr. Runzo's Transferability of Work Skills Report, which, in the company's words, had identified 'several full-time positions in [Sami's] geographical area that [he was] capable of performing or may become qualified to perform[.]'" *Ibid.* ¶ 19 (first citing AR at 3635–37; and then

6

quoting AR at 3636). That same day, "Guardian furnished Sami with copies of the two medical file-review reports . . . [and] Runzo's report[.]" *Id.* ¶ 20.

Following the denial of his appeal, Sami sued Guardian in federal court on January 16, 2023, *see* Complaint [ECF No. 1], seeking to "enforce his rights under the terms of the LTD Plan and to clarify his right to future benefits under the LTD Plan" pursuant to 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶ 20. According to Sami, Guardian "breached the LTD Plan and violated ERISA" in several ways, including by failing to "properly and adequately investigate the merits of S[ami]'s disability claim and [by] fail[ing] to provide a full and fair review of S[ami]'s claim." *Id.* ¶ 17. On November 10, 2023, both parties moved for summary judgment. *See generally* Pl.'s MSJ; Def.'s MSJ. Those motions are now ripe for resolution. *See generally* Plaintiff's Reply ("Pl.'s Reply") [ECF No. 35]; Defendant's Reply ("Def.'s Reply") [ECF No. 36].

## THE LAW

ERISA allows a participant in, or a beneficiary of, a group-benefits plan to sue in federal court "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B). In an ERISA benefits-denial case, "the district court sits more as an appellate tribunal than as a trial court." *Curran v. Kemper Nat. Servs., Inc.*, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17–18 (1st Cir. 2002)). In other words, the role of the court is to "evaluate[ ] the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Ibid.* When, as here, "the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Turner v. Am. Airlines, Inc.*, 2011 WL 1542078, at *4 (S.D. Fla. Apr. 21, 2011) (Hurley, J.) (quoting *Crume v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (Conway, J.)); *see also Crume*, 417 F. Supp. 2d at 1272 ("[C]onflicting evidence on the question of

7

disability cannot alone create an issue of fact precluding summary judgment, since an administrator's decision that rejects certain evidence and credits conflicting proof may nevertheless be reasonable." (citing *Bendixen v. Std. Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999))). Instead, "the Court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." *Epolito v. Prudential Ins. Co. of Am.*, 523 F. Supp. 2d 1329, 1334 (M.D. Fla. 2007) (Moore, J.) (citing *Crume*, 417 F. Supp. 2d at 1273 n.11).

The Eleventh Circuit has developed a multi-step framework for analyzing an administrator's benefits determination:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether [the administrator] was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then [end the inquiry and affirm the decision].

*Dawson v. Signa Corp.*, 261 F. Supp. 3d 1275, 1284 (S.D. Fla. 2017) (Scola, J.) (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195–96 (11th Cir. 2010)). A district court must review a denial of benefits under 29 U.S.C. § 1132(a)(1)(B) pursuant to "a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

ERISA and its implementing regulations also require "that claims administrators establish a procedure by which claimants can appeal an adverse benefit determination and receive 'a full and fair

8

review of the claim and the adverse benefit determination.'" *Browning v. Hartford Life & Accident Ins. Co.*, 2019 WL 7841719, at *6 (S.D. Fla. Apr. 23, 2019) (Middlebrooks, J.) (quoting 29 C.F.R. § 2560.503-1(h)(1)); *see also* 29 U.S.C. § 1133 ("In accordance with regulations of the Secretary, every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."). "In the Eleventh Circuit, the determination of whether a claims administrator has gathered and reviewed the appropriate materials to constitute a 'full and fair review' is one that occurs outside the bounds of the [multi]-step test governing the rightness or arbitrariness of the benefits determination." *Ibid.* (citing *Boysen v. Ill. Tool Works Inc.*, 2019 WL 1489078, at *6–7 (11th Cir. Apr. 3, 2019)). And, where a claimant is deprived of a full and fair review, "remand to the plan fiduciary is the appropriate remedy[.]" *Levinson v. Reliance Std. Life Ins. Co.*, 245 F.3d 1321, 1330 (11th Cir. 2001).

## ANALYSIS

In his Motion, Sami contends that he did not receive a full and fair review of his appeal because "Guardian failed to timely supply to Sami the new evidence the company relied upon in denying his administrative appeal and rendering its final adverse benefits determination, thus depriving him of his right to respond to that evidence." Pl.'s MSJ at 2. Because we must "determin[e] [ ] whether the administrative record is complete . . . prior to any decision on the rightness or arbitrariness of the claims administrator's benefits decision," *Browning*, 2019 WL 7841719, at *6; *see also Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 673 (11th Cir. 2014) ("This inquiry is not as much a . . . 'step zero' as it is a predicate to our ability to review the substantive decision we have been asked to review."), we'll take up this question first.

Since 2018, the Department of Labor has required that "[e]very employee benefit plan . . . maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a

full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1) (2018); *see also* 82 Fed. Reg. 56560, 56560 (Nov. 29, 2017) (setting April 1, 2018 as the implementation date of the "final rule amending the claims procedure requirements applicable to ERISA-covered employee benefit plans that provide disability benefits").[4] In the context of disability-benefit plans, such claims procedures

> will not . . . be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless[,] . . . before the plan can issue an adverse benefit determination on review on a disability benefit claim, the plan administrator *shall* provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination . . . in connection with the claim[.]

29 C.F.R. § 2560.503-1(h)(4) (2018) (emphasis added). Notably, "such evidence *must* be provided . . . sufficiently in advance of the date on which the notice of adverse benefit determination on review is required . . . to give the claimant a reasonable opportunity to respond prior to that date[.]" *Id.* § 2560.503-1(h)(4)(i) (emphasis added). These procedural requirements apply to all disability-benefit claims "filed under a plan on or after January 1, 2002," *id.* § 2560.503-1(p)(1), except those filed between "January 18, 2017 [and] April 1, 2018," *id.* § 2560.503-1(p)(4).

Sami filed his claim for long-term disability benefits on October 20, 2016, *see* Def.'s SOF ¶ 18 ("On October 20, 2016, Guardian's Long-Term Disability Claims Department received early notice of a claim for benefits from the Short-Term Disability Claims Department." (citing AR at 3632)); *see also* Plaintiff's Response Statement of Facts ("Pl.'s Resp. SOF") [ECF No. 30] ¶ 18 ("Undisputed."),

---

[4] Since adopting that rule in 2018, the Department of Labor has amended § 2560.503-1 two times. *First*, on May 27, 2020, the Department promulgated "a new, additional safe harbor for employee benefit plan administrators to use electronic media . . . to furnish information to participants and beneficiaries of plans" subject to ERISA. 85 Fed. Reg. 31884, 31884 (May 27, 2020). *Second*, on July 2, 2020, the Department "correct[ed] an inadvertent error in paragraph numbering" in the previous amendment. 85 Fed. Reg. 39831, 39831 (July 2, 2020) (citing 85 Fed. Reg. 31884 (May 27, 2020)). Neither of these amendments affected the 2018 Amendment's claim-procedure requirements.

bringing it under the purview of the 2018 Amendment's procedures.[5] And Guardian doesn't dispute that, on the same day it "notified Sami of [its] final decision to uphold on appeal the termination of [Sami's] LTD benefits," Pl.'s SOF ¶ 19 (citing AR at 3629–38), it "furnished Sami with copies of [ ] two medical file-review reports that [it] had relied upon in considering [Sami's] appeal and reaching its

---

[5] In *Glazer v. Reliance Standard Life Insurance Co.*, the Eleventh Circuit held that, under a *prior* version of this regulation, *see* 29 C.F.R. § 2560.503-1 (2002), a claim administrator's failure "to provide [the claimant] with a copy of [a] report produced . . . during the pendency of the review of the initial denial of benefits" did *not* deprive the claimant "of a full and fair review," *Glazer*, 524 F.3d 1241, 1245 (11th Cir. 2008) (cleaned up). The 2002 Regulation, however, only required the administrator to "'[p]rovide . . . *upon request* . . . all documents, records, and other information relevant to the claimant's claim for benefits' for the review to qualify as a 'full and fair review,'" *ibid.* (emphasis added) (quoting 29 C.F.R. § 2560.503-1(h)(2)(iii) (2002)); *see also* 29 C.F.R. § 2560.503-1(m)(8)(i)–(ii) (2002) (defining as "relevant" any "record, or other information . . . relied upon in making the benefit determination [or] . . . submitted, considered, or generated in the course of making the benefit determination"). The 2018 Amendment preserved the 2002 Regulation's standard for a "full and fair review" *only* for "claims for disability benefits filed under a plan from January 18, 2017 through April 1, 2018[.]" 29 C.F.R. § 2560.503-1(p)(4) (2018). All *other* disability claims "filed under a plan on or after January 1, 2002," *id.* § 2560.503-1(p)(1), would now be governed by the 2018 Amendment's standard, including the *requirement* that an administrator provide the claimant with any new evidence "sufficiently in advance of [making the determination] . . . to give the claimant a reasonable opportunity to respond prior to that date," *id.* § 2560.503-1(h)(4)(i). In fact, the 2018 Amendment was adopted "to clarify that, contrary to what some circuit courts have held under the 2002 Regulation, . . . 'claimants are deprived of a full and fair review, as required by section 503 of ERISA, when they are prevented from responding, at the administrative stage level, to all evidence and rationales.'" *Jette v. United of Omaha Life Ins. Co.*, 18 F.4th 18, 30–31 (1st Cir. 2021) (quoting 81 Fed. Reg. 92316, 92324–25 & n.17 (Dec. 19, 2016)). Because *Glazer* was decided "in the context of interpreting a . . . regulation[ ] that ha[s] since been superseded by an amended [regulation]," *Hill v. Branch Banking & Tr. Co.*, 264 F. Supp. 3d 1247, 1259 (N.D. Ala. 2017) (citing *Sutton v. Lader*, 185 F.3d 1203 (11th Cir. 1999)), it doesn't control our interpretation of the 2018 Amendment, *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 257 (2012) ("The new text is the law, and where it clearly makes a change, that governs."). In any event, Guardian appears to agree that the 2018 Amendment applies here, as it cites to that version's language in defining § 2560.503-1's requirements. *See* Defendant's MSJ Response ("Def.'s MSJ Resp.") [ECF No. 32] at 11 ("Any new or additional 'evidence must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided . . . to give the claimant a reasonable opportunity to respond.'" (quoting 29 C.F.R. § 2560.503-1(h)(4)(i) (2018))). Guardian has therefore forfeited any arguments it might have advanced under the language of the 2002 Regulation (or *Glazer*'s interpretation of it). *See, e.g.*, *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

11

final benefits decision"—*without* first giving Sami an opportunity to "respond to such new reports," *id.* ¶ 20; *see also* Defendant's Response Statement of Facts ("Def.'s Resp. SOF") [ECF No. 31] ¶ 20 ("Undisputed.").

The plain text of the regulation mandates that "any new or additional evidence considered, relied upon, or generated . . . in connection with the claim . . . *must* be provided [to the claimant] . . . sufficiently in advance" of the determination deadline to give the claimant "a reasonable opportunity to respond" to that evidence. 29 C.F.R. § 2560.503-1(h)(4)(i) (2018) (emphasis added); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 112 (2012) ("Mandatory words [like 'must'] impose a duty[.]"). Because Guardian *didn't* do that, it unlawfully deprived Sami of "a full and fair review of [his] claim and adverse benefit determination[.]" 29 C.F.R. § 2560.503-1(h)(4) (2018).

Resisting this conclusion, Guardian offers three arguments for its view that the delay in furnishing Sami with copies of the doctors' reports *doesn't* render its denial of Sami's claim procedurally invalid. We'll consider (and reject) each in turn.

*First*, Guardian says that, because it "provided [ ] Sami with the reports as soon as they were completed," it *basically* complied with its obligation under § 2560.503-1(h)(4)(i) to disclose new evidence "as soon as possible[.]" Defendant's MSJ Response ("Def.'s MSJ Resp.") [ECF No. 32] at 7 (quoting 29 C.F.R. § 2560.503-1(h)(4)(i) (2018)). Even if we were to agree that Guardian shared the reports with Sami "as soon as possible," *see Moreno v. Wal-Mart Stores E., LP*, 2024 WL 1513457, at *3 (S.D. Fla. Apr. 5, 2024) (Altman, J.) ("[O]n summary judgment, the Court must 'review the facts and all reasonable inferences in the light most favorable to the non-moving party.'" (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001))), that's not all § 2560.503-1(h)(4)(i) requires. Instead, that subsection mandates that "such evidence . . . be provided as soon as possible *and* sufficiently in advance of the date on which the notice of adverse benefit determination . . . is required

to be provided . . . to give the claimant a reasonable opportunity to respond prior to that date[.]" 29 C.F.R. § 2560.503-1(h)(4)(i) (2018) (emphasis added).

We needn't pinpoint exactly how much time is "sufficiently in advance" of the determination deadline to be confident that Guardian didn't meet that requirement here, since it indisputably shared the new reports with Sami on *the same day* it denied his appeal. *See* Pl.'s SOF ¶ 20 ("Guardian further advised that although it was ordinarily the company's practice to allow claimants ten days to respond to such new reports, in this instance the reports were being 'sent with our decision letter' because the regulatory deadline for making a final decision had arrived." (quoting AR at 3639)); Def.'s Resp. SOF ¶ 20 ("Undisputed."); *see also Harris v. Aetna Life Ins. Co.*, 379 F. Supp. 2d 1366, 1372 (N.D. Ga. 2005) ("[T]here can hardly be a meaningful dialogue between the claimant and the Plan administrators if evidence is revealed only after a final decision." (quoting *Abram v. Cargill, Inc.*, 395 F.3d 882, 885 (8th Cir. 2005))); *Zall v. Std. Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023) ("We are confident that in this case, *nine days* advance notice of the existence of such a critical document was not a reasonable opportunity for [the claimant] to respond substantively to the new evidence against his claim." (emphasis added)). Because Guardian was required to provide Sami with the new evidence *both* "as soon as possible" *and* "sufficiently in advance" of the decision deadline, 29 C.F.R. § 2560.503-1(h)(4)(i) (2018), its compliance with only one of those conditions is insufficient to constitute a full and fair review, *see* SCALIA & GARNER at 116 ("*And* joins a conjunctive list . . . . With the conjunctive list, all [enumerated] things are required[.]").

*Second*, Guardian tries to shift the blame for its untimely disclosure onto Sami because Sami "would 'not allow an extension' of the review deadline[.]" Def.'s MSJ Resp. at 8 (quoting Def.'s Resp. SOF ¶ 30)). After determining that the "results of the peer-physician reviews" might not be available by the time the second "45-day review period" for Sami's appeal "expire[d] on December 13, 2020," Def.'s SOF ¶ 50 (citing AR at 3514–17); *see also* AR at 3517 ("[W]e will need additional time to assess

13

the completed review . . . . We will reach the expiration of our 2nd 45-day review period on December 13, 2020."), Guardian informed Sami on December 7, 2020, that, "in order to continue [its] review," it needed Sami's "permission to extend" the review deadline beyond December 13, *see* AR at 3517. Sami, however, was "not agreeable to another extension beyond December 13, 2020," and instead told Guardian to "email and mail [him the] determination" and to "provide [him with] a complete claim file, should [Guardian] reach a[n] unfavorable determination." *Id.* at 3515. On December 8, 2020, Guardian informed Sami that the results of the peer-physician reviews were "not favorable," and that it would send him "all new evid[ence] with [the] final determination letter." *Id.* at 3509. Guardian then sent Sami the final determination letter (denying his claim) *and* "copies of the two medical file-review reports" on December 14, 2020. Pl.'s SOF ¶ 20; *see also* Def.'s SOF ¶ 20 ("Undisputed.").

From Guardian's perspective, Sami shouldn't be able to argue that "Guardian deprived him of the opportunity to respond to the reviews," since he "effectively declined the opportunity to do so" when "he refused to ask for an extension of the review-period deadline." Def.'s MSJ Resp. at 12 (emphasis omitted). But it was *Guardian's* responsibility—not Sami's—to ensure that the appeal was given a full and fair review within the prescribed period. *See Brewer v. Unum Grp. Corp.*, 622 F. Supp. 3d 1113, 1131 (M.D. Ala. 2021) ("[The insurer] controlled the timing of sending new information to [the claimant], not vice versa."). The plain text of § 2560.503-1(i) vests the authority to extend the deadline for making a benefit determination on review *solely* with the plan administrator. *See* 29 C.F.R. § 2560.503-1(i)(1)(i) (2018) ("If the *plan administrator* determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period." (emphasis added)).[6] And, while Guardian apparently told Sami that it

---

[6] In its Response, Guardian cites § 2560.503-1(f)(3) in explaining the regulation's deadline and extension procedures. *See* Def.'s MSJ Resp. at 12 ("29 [C.F.R.] § 2560.503-1(f)(3) [ ] requir[es] a plan

14

"need[ed] [his] permission to extend the [deadline] beyond December 13, 2020," AR at 3517, Guardian never explains *why* it believed that Sami's consent could somehow abrogate Guardian's regulatory obligations.

Section 2560.503-1(i) allows the plan administrator *one* 45-day extension of a review period, and "[i]n no event shall such extension exceed a period of [45] days from the end of the initial period." 29 C.F.R. § 2560.503-1(i)(1)(i) (2018); *see also id.* § 2560.503-1(i)(3)(i) ("[C]laims involving disability benefits . . . shall be governed by paragraph (i)(1)(i) of this section, except that a period of 45 days shall apply instead of 60 days for purposes of that paragraph."). Without citing any supporting authority, Guardian is essentially asking us to rewrite the regulation's timing requirements to add an exception for claimants who consent to further delays. We obviously won't be doing that. *See* SCALIA & GARNER at 93 ("Nothing is to be added to what the text states or reasonably implies. . . . That is, a matter not covered is to be treated as not covered."); *see also MY P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1346 (S.D. Fla. June 14, 2021) (Altman, J.) ("The law demands that lawyers present their clients' cases with argument and citation. It doesn't—nor should it—permit lawyers to fling whatever arguments they might conjure (however far-fetched or frivolous) at the judge in the hopes that, by a prodigious use of a Westlaw account, that intrepid judge (and his smart law clerk) might find the one case that stands in support of their proposition.").

As such, Guardian must bear the costs of its delayed review. *See Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000) ("[E]mployees should not have their ERISA claims adversely affected by . . . technical noncompliance with ERISA regulations[.]"). To hold otherwise would be to

---

administrator to render a decision no later than 45 days after receipt of a claimant's request for review . . . [and] permit[s] a plan administrator to extend the deadline 'due to matters beyond the [administrator's] control[.]'" (quoting 29 C.F.R. § 2560.503-1(f)(3) (2018))). But subsection (f) governs the "[t]iming of notification of [a] benefit determination," 29 C.F.R. § 2560.503-1(f) (2018), whereas subsection (i) governs the "[t]iming of notification of [a] benefit determination *on review*," *id.* § 2560.503-1(i) (emphasis added). We'll therefore apply the latter subsection here.

15

incentivize claim administrators to put off new reports until the last minute and then to offer claimants a Hobson's Choice: forego a timely review or relinquish any meaningful opportunity to respond to the administrator's new evidence. But § 2560.503-1 entitles the claimant to *both* procedural protections. *See Brewer*, 622 F. Supp. 3d at 1130 ("[T]he claims-procedure regulation imposes a strict deadline on plan administrators deciding appeals from adverse-benefit determinations."); *Seger v. ReliaStar Life*, 2005 WL 2249905, at *11 (N.D. Fla. Sept. 14, 2005) (Vinson, J.) ("ERISA's regulatory deadlines play a role in ensuring a 'full and fair' review, where a crucial element of fairness to the claimant involves a timely decision[.]" (emphasis omitted)). And those requirements are neither aspirational, *see* SCALIA & GARNER at 112 ("Mandatory words impose a duty[.]"), nor "subject to negotiation with claimants," Pl.'s Reply at 5. We won't, in sum, punish Sami for Guardian's failure to meet *its* regulatory obligations under ERISA.

*Third*, Guardian insists that, "even if [it] committed a technical procedural violation[,] . . . that violation was *de minimis* and did not impact Guardian's full and fair review of Mr. Sami's claim." Def.'s MSJ Resp. at 13. We cannot understate the absurdity of this claim. The "technical procedural violation" to which Guardian is referring is its failure to provide Sami with the newly generated evidence "sufficiently in advance" of "issu[ing] an adverse benefit determination on review on [his] disability benefit claim[.]" 29 C.F.R. § 2560.503-1(h)(4)(i) (2018). By definition, this failure deprived Sami of a full and fair review within the meaning of ERISA. *See ibid.* ("The claims procedures . . . [will not] provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . such evidence . . . [is provided] sufficiently in advance of the [review-period deadline.]"). While *some* procedural violations might "not impact a full and fair review of [the claimant's] claims," Def.'s MSJ Resp. at 9 (quoting *Bloom v. Hartford Life & Accident Ins. Co.*, 917 F.

Supp. 2d 1269, 1288 (S.D. Fla. 2013) (Ryskamp, J.), *aff'd*, 558 F. App'x 854 (11th Cir. 2014)),[7] Guardian's untimely disclosure of the new reports *necessarily* does.

Guardian simply has not "satisfied ERISA's minimum procedural requirements and conducted a 'full and fair review'" of Sami's claim. *Duley v. BB&T Corp. Pension Plan*, 2020 WL 1443569, at *3 (S.D. Fla. Mar. 23, 2020) (King, J.). Because we "cannot evaluate [the] ultimate decision to deny [a] claim" on an incomplete administrative record, *Melech*, 739 F.3d at 672; *see also Duley*, 2020 WL 1443569, at *3 ("ERISA places upon a plan administrator 'the responsibility to fully investigate a claim before denying benefits.'" (quoting *Capone*, 592 F.3d at 1199–1200 (cleaned up))), we cannot yet rule on the merits of Guardian's decision to deny Sami's claim, *see Browning*, 2019 WL 7841719, at *6 ("The determination of whether the administrative record is complete occurs prior to any decision on the rightness or arbitrariness of the claims administrator's benefits decision." (citing *Boysen*, 2019 WL 1489078, at *6)).

Where, as here, "the court finds that the administrator failed to conduct a full and fair review, the appropriate remedy is to remand the case to the administrator for further review." *Duley*, 2020 WL 1443569, at *3 (citing *Melech*, 739 F.3d at 676); *see also Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) ("[T]he usual remedy [for a technical violation is] . . . remand to the plan administrator for an out-of-time administrative appeal." (cleaned up)); *Browning*, 2019 WL 7841719, at *6 ("If a court finds that the administrative record was incomplete, the appropriate remedy is to remand the case to the claims administrator for further review." (first citing *Levinson*, 245 F.3d at 1330; and then citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989))).

---

[7] *Cf. Bloom*, 917 F. Supp. 2d at 1285–86 (holding that the claimant was not deprived of a full and fair review where the administrator "(1) improperly initiated and used surveillance as a basis to terminate [the claimant's] benefits; (2) failed to acknowledge consideration of [the claimant's] Social Security Disability [ ] award in [the] termination letter; and (3) failed to employ a 'perfection statement' to notify [the claimant] of information absent from the administrative record").

We'll therefore remand this case to give Sami a "reasonable opportunity to respond" to the new reports that were "considered, relied upon, or generated by [Guardian]" while Sami's appeal was pending, 29 C.F.R. § 2560.503-1(h)(4)(i), including Dr. Hess's Peer Physician Review, *see* AR at 3540–44, Dr. Shenker's Peer Physician Review, *see id.* at 3531–38, and John Runzo's Transferability of Work Skills Report, *see id.* at 3583–86. Only then—with the benefit of a *complete* administrative record—can Guardian give Sami a full and fair review of his claim.

One last thing. Sami also says that he's "entitled to recover reasonable attorney's fees pursuant to section 1132(g) of ERISA." Pl.'s MSJ at 5. ERISA "does not award fees to the prevailing party outright; but rather, allows for attorney's fees for either party in accordance with the district court's discretion." *McKnight v. S. Life & Health Ins. Co.*, 758 F.2d 1566, 1572 (11th Cir. 1985). In exercising that discretion, courts should consider:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) [and] the relative merits of the parties' positions.

*Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993).

The parties' briefing gives us little to work with. They, in fact, only raise the question of attorneys' fees in passing and never mention how the *Freeman* factors support (or counsel against) such an award. *See* Pl.'s MSJ at 5 ("[S]ummary judgment should be entered in favor of Sami, and Sami's LTD claim should be remanded to Guardian with Sami deemed entitled to recover reasonable attorney's fees pursuant to section 1132(g) of ERISA."); Def.'s MSJ at 15 ("Finally, this Court should deny Mr. Sami's request for attorney fees under 29 U.S.C. § 1132(g). . . . His claim for long-term disability benefits fails at every level. He did not show that Guardian incorrectly denied his claim, let alone that the denial was unreasonable. And he has not shown that Guardian failed to provide him

18

with a proper notice and explanation, or full and fair consideration of his claims."). Plus, because we're remanding this case for further review based on a procedural error—and since we're offering no decision on the substantive reasonableness of Guardian's decision—it would be "inappropriate" to award attorneys' fees at this time. *See Montgomery v. Metro. Life Ins. Co.*, 2006 WL 1455684, at *3 (N.D. Ga. May 23, 2006) ("It is beyond the scope of the court's inquiry on the plaintiff's current motion for attorney's fees to speculate on how it might have ruled on the merits of this case. Having never reviewed the relative merits of the parties' positions, the court concludes that the award of attorney's fees would be inappropriate."). We therefore deny Sami's request for attorneys' fees.

\* \* \*

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Plaintiff's Motion for Summary Judgment [ECF No. 29] is **GRANTED in part** (to the extent it seeks remand for further administrative proceedings) and **DENIED in part** as to its request for attorneys' fees under 29 U.S.C. § 1132(g).
2. The Defendant's Motion for Summary Judgment [ECF No. 28] is **DENIED**.
3. This case is **REMANDED** to the Defendant, The Guardian Life Insurance Company of America, for further review and reconsideration of the Plaintiff's claim for long-term disability benefits in compliance with this Order.
4. Pursuant to Federal Rule of Civil Procedure 58, the Court will enter final judgment separately.
5. This case shall remain **CLOSED**.

**DONE AND ORDERED** in the Southern District of Florida on July 22, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record